UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Ramy Ayoub Ibrahim

Write the full name of each plaintiff.

-against-

Apple inc.

Write the full name of each defendant. The names listed above must be identical to those contained in Section I.

25-CV-4420

(Include case number if one has been assigned)

Do you want a jury trial?
☑ Yes  ☐ No

# EMPLOYMENT DISCRIMINATION COMPLAINT

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 1/24/19

## I. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

Ramy | Ayoub | Ibrahim
First Name | Middle Initial | Last Name

211E 43rd St, 7th FL, STE # 470
Street Address

New York | NY | 10017
County, City | State | Zip Code

347 770 0758 | RamyAyoub@Icloud.com
Telephone Number | Email Address (if available)

### B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1: Apple Inc.
Name

One Apple Park Way
Address where defendant may be served

Cupertino | CA | 95014
County, City | State | Zip Code

Defendant 2: 
Name

Address where defendant may be served

County, City | State | Zip Code

Defendant 3:

_____
Name

_____
Address where defendant may be served

_____
County, City           State           Zip Code

## II. PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

_Apple store w 14th st._
Name

_401 W 14th st._
Address

_New York_           _NY_           _10014_
County, City         State          Zip Code

## III. CAUSE OF ACTION

### A. Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☑ **Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17**, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☑ race: _____

☐ color: _____

☐ religion: _____

☐ sex: _____

☑ national origin: _Egyptian_

Page 3

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

   My race is: _____

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

   I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

   My disability or perceived disability is: _____

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

   My disability or perceived disability is: _____

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

**B. Other Claims**

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☒ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

_____

## IV. STATEMENT OF CLAIM

### A. Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐ did not hire me
- ☑ terminated my employment
- ☐ did not promote me
- ☐ did not accommodate my disability
- ☑ provided me with terms and conditions of employment different from those of similar employees
- ☑ retaliated against me
- ☑ harassed me or created a hostile work environment
- ☐ other (specify): _____

### B. Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

Throughout my employment, I was treated differently from other employees by one of the managers. When I raised a several complaints about this discrimination, I was subjected to retaliation. I experienced increased Hostility and pressure, which ultimately led to the termination of my employment

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V. ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☑ Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge? __JUN 2024__

☐ No

Have you received a Notice of Right to Sue from the EEOC?

☑ Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice? __Feb. 28th 2025__
When did you receive the Notice? __Feb. 28th 2025__

☐ No

## VI. RELIEF

The relief I want the court to order is (check only those that apply):

☐ direct the defendant to hire me

☑ direct the defendant to re-employ me

☐ direct the defendant to promote me

☐ direct the defendant to reasonably accommodate my religion

☐ direct the defendant to reasonably accommodate my disability

☑ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here):

__To compensate me for the unlawful termination, discrimination, harassment, and retaliation I endured. Additionally I request that the court direct the defendant to implement workplace policy changes to ensure a discrimination free environment.__

Page 6

## VII. PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

Dated: May 27th 2025

Plaintiff's Signature

First Name: Ramy
Middle Initial: Ayoub
Last Name: Ibrahim

Street Address: 211 E 43rd St., 7th FL, STE 470

County, City: New York
State: NY
Zip Code: 10017

Telephone Number: 347 770 0758
Email Address: RamyAyoub@icloud.com

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☑ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Houston District Office
1919 Smith Street, 6th Floor
Houston, TX 77002
(346) 327-7700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 02/28/2025

**To:** Mr. Ramy A. Ibrahim
211 E 43rd St 7th Fl, STE 470 New York, NY, 10017
NEW YORK, NY 10017
Charge No: 520-2024-06017

EEOC Representative and email:   DEIRDRE ARTHUR-REED
Federal Investigator
deirdre.arthur-reed@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Rayford O. Irvin
02/28/2025
Rayford O. Irvin
District Director

Cc:
Dana Weisbrod
Jackson Lewis P.C.
666 3RD AVE FL 28
New York, NY 10017

Drew Fryhoff
Jackson Lewis P.C.
666 3RD AVE FL 28
New York, NY 10017

Please retain this notice for your records.

From: Ramy Ayoub ramyayoub@icloud.com
Subject: Re: Submitting recordings IRT Ibrahim v Apple Inc 520-2024-06017
Date: February 28, 2025 at 2:42 AM
To: DEIRDRE ARTHUR-REED DEIRDRE.ARTHUR-REED@eeoc.gov



### Subject: Follow-Up: Submission of Meeting Recordings

Dear Ms. Arthur-Reed,

Thank you for your follow-up email and for allowing me additional time to submit the requested files. As agreed, I am providing access to the meeting recordings via the following cloud link: [HERE https://u.pcloud.link/publink/show?code=kZ4hH45ZJ9sLhADtG9QRmDvgBiCAYJFTt7wy]. Please confirm once you are able to access the files successfully.

These recordings serve as direct evidence supporting my claims that I was systematically targeted, discriminated against, and retaliated against by certain members of Apple's management.

While no explicit verbal acknowledgment of discrimination was made, some managers made statements implying discriminatory intent. In July 2023, a manager informed me that, "sadly, they don't like people from where I am from," and advised me to escalate my concerns to the People Team (Human Resources) due to the discriminatory practices I was facing.

The recordings illustrate how I repeatedly raised concerns about unfair treatment, yet the pattern of actions taken against me afterward strongly indicates retaliation. From March 2023 to August 2023, I filed multiple complaints regarding discriminatory treatment, yet no meaningful action was taken. Instead, the mistreatment persisted, ultimately culminating in my termination in September 2023, based on an alleged incident in July 2023.

However, the circumstances surrounding this incident were later confirmed to be a misunderstanding. Other employees regularly used the same 15-minute preparation period before their shifts for coffee or breakfast from nearby locations—just as I did. On July 11, 2023, I was informed for the first time that this was not allowed, and I never repeated it. If my actions were truly considered an issue, a simple coaching or warning would have sufficed. Instead, I was terminated in September 2023—shortly after filing a complaint with the People Team in mid-August. This timeline raises serious concerns about retaliation and discrimination.

---

### Summary of Meeting Recordings

**1. August 19, 2023 – Meeting with Hanz the Store Leader and My Direct Manager Laura (Recap of Discrimination Complaints & Retaliation)**

- [00:04:10 – 00:14:00]: Confirmation that I made multiple complaints to my direct manager, Laura, between April and July 28, requesting resolution before escalating the issue to the People Team.
- [00:14:00 – 00:17:45]: Failure to notify me about key changes and decisions affecting my employment.
- [00:17:45 – 00:23:40]: Repeated schedule deletions and lack of response when I attempted to address this issue with management.
- [00:23:40 – 00:42:30]: Discussion about business introductions and my plans for September 2023, which contradicts the claim that my termination was being considered at the time.
- [00:47:53 – 00:56:20]: Explanation of the time theft accusation involving Caitlin, where I had already received approval to take time to prepare before starting work.
- [00:56:20 – End]: General feedback on previous experiences of discrimination that I had shared with Laura.

**2. May 31, 2023 – Monthly Meeting with Direct Manager Laura (Discrimination & Retaliation by Debra and Other Managers)**

- [00:24:35 – 00:25:58]: Discussion of how my schedule was manipulated to place me in a low-traffic area while others were moved into better positions.
- [01:01:15 – 01:02:10]: Confirmation from Laura that discriminatory practices occurred under Debra's management.
- [01:04:50 – 01:10:22]: Explanation of how retaliation began with Carly, but after discussing it with her, she understood my perspective and stopped.

**3. June 4, 2023 – Team Meeting with Laura and the Management Team**

- [00:06:18 – 00:10:08]: Discussion of how feedback and criticism directed at me were often biased and based on assumptions rather than performance.
- [00:22:50 – 00:26:38]: Further discussion of discriminatory practices by Debra.
- [00:33:28 – 00:34:10]: Discussion about the importance of privacy when sharing feedback, which was often ignored.

These recordings confirm that I raised my concerns multiple times, yet they were dismissed, downplayed, or ignored—further proving a pattern of systematic discrimination and retaliation.

---

### Witnesses

Additionally, I would like to provide three managers as witnesses who can confirm the discriminatory practices I experienced or attest to my work ethic and conduct:

**1. Dietmar Stork (My Direct Manager During Early Employment)**

- In March 2023, Dietmar confirmed that Debra's actions regarding the uniform situation were improper. He stated that if a similar situation had happened to someone else, they would have escalated the issue to the People Team. Despite this acknowledgment, the discriminatory treatment by Debra continued for months.
- **Contact:** +1 (201) 381-7988

**2. Paddy King (Forum Department Manager)**

- Paddy oversaw Apple's volunteer activities, in which I frequently participated. My involvement in these events, despite being unpaid, demonstrates my commitment to the company and contradicts the claim that I was terminated over a six-minute period before my shift.
- **Contact:** +1 (347) 531-4363

**3. Jubin Mathews**

- I was informed by Jubin that I was being targeted and that certain managers were actively trying to build a case against me to justify a reason for my termination. He advised me to contact the People Team immediately before it's too late.
- **Contact:** +1 (516) 712-8738

## Additional Evidence

### Course Completion Certificate (July 11, 2023)

Attached is a certificate confirming that on July 11, 2023—the day of the alleged incident—I arrived 20 minutes early to work and used my free time productively to complete a training course. My intent was never to engage in time theft.

I did not clock in before my shift began. However, I was asked to assist an Arabic-speaking customer, requiring me to clock in at that moment. This request placed me in a situation that was later used against me. This occurred **after** I had completed the training course.

After assisting the customer, and still within the 15-minute preparation period before my shift, I briefly stepped outside in front of the store to smoke a cigarette before beginning work. My original plan was to step outside after finishing the course and then clock in as usual. However, since I was asked to help the customer, I clocked in earlier than intended to avoid being late if the assistance took longer than expected.

It is evident that I was placed in this situation intentionally, and the circumstances were later misrepresented to justify my termination. This certificate further confirms that my actions were within normal practice and that my termination was unjustified.

Course Completion Certificate                                        7/11/23, 4:10 PM

**Ramy Ayoub Ibrahim**

successfully completed

**Privacy**

July 11, 2023

**Certified by**
Global Training

https://apple-lcec.lrn.com/app/certificate2/ViewCertificate?catalog_no=APL711-a80en                                Page 1 of 1

**Course Completion Certificate Private.eml** 

## Scholarship Approval & Retaliation Evidence

July 30th, 2023: Attached is a scholarship approval from Apple Inc. for $5,200 annually, followed by the approval from the Store Leader, Hanz—the same Store Leader I met with after filing my complaint with the People Team in mid-August 2023. This confirms that there was no initial intent to terminate me based on the July 11th, 2023, incident. Instead, my termination was an act of **retaliation** following my formal complaint to the People Team regarding discriminatory practices by certain managers, and I was terminated in Spe. 2023 based on a misunderstanding on July 11th, 2023.

**Free Tuition 282460-02.pdf**
760 KB


**Fwd: Class_Subject Free Tuition Approved.eml** 

## Final Remarks

Attached is an email summarizing the entire situation. Additionally, the **record download link** contains all supporting materials.

**Re: Apple Decision Review.eml**
7.6 MB


Please let me know if you experience any issues accessing the files or if you require further information. I appreciate your time and consideration in reviewing this evidence thoroughly.

Record download link

https://u.pcloud.link/publink/show?code=kZ4hH45ZJ9sLhADtG9QRmDvgRlCAYJFTt7wy



Alternative Download link

https://we.tl/t-WgQiFAataS

Sincerely,
Ramy

---

On Feb 27, 2025, at 2:03 PM, DEIRDRE ARTHUR-REED <DEIRDRE.ARTHUR-REED@eeoc.gov> wrote:

Good afternoon Mr. Ibrahim,

This is a follow up email to recap the conversation we just had. Your recordings were due by today but you are requesting an extra day due to the files being too large to upload in to the portal.

As agreed upon, you stated you will upload them to the cloud and send the link to me via email by the time I come to work tomorrow, February 28th, 2025.

Please note as discussed in the pre determination interview I held with you on February 25, 2025, if I do receive the email, or am unable to open the link or the information is not such that it influences the case to further investigation, I will be issuing the Notice of Right to Sue.

Respectfully,

*Deirdre Arthur-Reed*
Federal Investigator
U.S. Equal Employment Opportunity Commission

U.S. Equal Employment Opportunity Commission
Houston District Office
1919 Smith St.
Houston, Texas 77002
Direct: (346) 327-7673
Email: Deirdre.Arthur-Reed@eeoc.gov

**From:** Ramy Ayoub ramyayoub@icloud.com 
**Subject:** Re: Apple Decision Review
**Date:** May 24, 2024 at 4:54 PM
**To:** Alexa Prakash alexa_prakash@apple.com
**Cc:** tcook@apple.com, lawenforcement@apple.com

Hi Alexa,

Thank you for your follow-up email regarding the Decision Review process.

While I understand that the decision to terminate my employment was found to be within guidelines, **Even if it's not within guidelines, I have documented how the Apple Store leaders can fake it to look within guidelines confirmed by one of the store managers**, I am concerned that my ongoing complaints since March 2023 until Aug. 2023 about discrimination, racism and harassment by Debra, one of the store managers have not been addressed in this review. These complaints are significant and have impacted my experience at Apple deeply.

Specifically, I have previously documented and communicated my concerns about discriminatory treatment and harassment, I believe these concerns warrant further investigation and consideration, as they are crucial to understanding the context of my termination. I am committed to in-person providing any additional information or documentation needed to support this.

It is important to me that this matter is thoroughly reviewed to ensure fairness and compliance with Apple's commitment to a discrimination-free workplace.

So I am writing to express my deep concern regarding the termination notice I received, which does not address my ongoing complaints about discrimination from one of the managers. Here is a detailed account of the situation:

A. I have made multiple complaints to my direct manager, Laura, in April, May, and June 2023 about discriminatory practices by Debra, which started in March 2023. I waited to complain until I was sure it was a personal target against me. When I did not receive any serious response from Laura, the discrimination continued from Debra and was even followed by other managers as a form of retaliation. This affected my vacation approvals and led to being moved from active floor spots to the accessories area, which impacted my KPIs by forcing me to serve multiple customers simultaneously.

B. This discrimination has been ongoing, especially after I shared my feedback in a public meeting twice on June 4, 2023, and the second time on June 8, 2023, about the misuse of sustainability practices that could have avoided huge wastage in our daily practices in the store. I also mentioned the abuse, and improper practices, including humiliation and discrimination by some managers, affecting the staff's morale. Despite working part-time and mostly coming to the store on weekends, I noticed a significant difference in how people felt compared to before, which was reflected in the Pulse results, which have significantly decreased. Favoritism has also increased towards a few selected people who are "kissing up" and clapping their hands for any wrong practices as long as it does not impact them personally.

Since that meeting, I have seriously felt targeted and get anxious every time I go to work. I have been told by a few people that I have a "laser target on my back" because of what I said in the meeting. Most of the managers did not like that, and they have been targeting me.

C. On July 26, I asked my direct manager, Laura, to escalate my serious complaint about discrimination as I no longer feel safe at work, being targeted most of the time. She promised me a Webex call on July 28 (a non-working day for me but agreed due to her busy schedule), and we set the call for that day.

D. On the morning of July 28, I explained to Laura in the Webex call the suffering I have been enduring over the past 5-6 months, including humiliation and discrimination. I was surprised by her denial, especially since she was somewhat supportive earlier when the complaint was about Debra or Carly but turned 180 degrees when it involved Sam or Caitlin. I informed her of this and showed her a comparison of her responses to my complaints in May versus July.

I have faced several types of discrimination, humiliation, mistreatment, and abuse, including:

- Being asked to clean dust under tables, which is not part of my job.
- Being forced to remove the black jacket, part of the uniform, while others were allowed to wear it.
- Being moved from my scheduled shifts in high-demand sales areas to the accessories area, impacting my KPIs.
- Being overwhelmed with a large number of customers, sometimes managers get me over five at a time asking me to service them and ignoring the standard of serving one customer at a time, affecting my customer reviews and NPS by serving multiple customers at once.
- Refusal of support or feedback from some managers, always saying they are busy.
- Adjustments or removal of my working schedule at all, impacting my income and KPI metrics.

E. On the evening of July 28, I received a call from one of the managers informing me that I am being targeted and that some managers are trying to get me into trouble until they find a way to terminate me. They advised me to call the people team urgently to raise a complaint. This was followed by the deletion of my shifts and ignoring my calls and emails when I asked about my weekly shifts and whether I should come to work during my normal working days (Wednesday, Saturday, and Sunday). I often did not receive a clear response about the reason for removing my schedule other than being told to keep checking with the people team and other managers.

F. I started calling the people team, mainly asking about my schedule and why I was not getting shifts as usual. For almost a month, I did not receive any shifts until I called and asked about them.

G. Since I complained, many of the store managers' responses have not been good. Many people stopped greeting me, refused to support me, and overwhelmed me with extra tasks compared to other staff who were doing nothing.

H. On August 13, I was abused by the same manager, Debra, who asked me to move over 150 chairs to the third floor before a store team event. Despite explaining that I cannot move a lot of heavy items at once, she said she would send more people to help but did not. Another team member and I were locked in the back area for a long time without help until we moved everything ourselves.

I. The next day, August 14-16, I filed a complaint with the people team and did not receive a clear response other than being advised to speak with a higher level than my direct manager. I explained that I had already complained to my direct manager multiple times and needed a meeting with the store leader to explain how I felt targeted at work. The people team informed me that I could directly complain to the store leader, which I did during my next opportunity as organized with my direct manager, Laura.

J. On August 19, I had the first connection meeting with the store leader, Hans, and my direct manager, Laura, in a 90-minute meeting, I recapped multiple cases of discrimination, dehumanization, and mistreatment in detail, including evidence and documentation that Laura was aware of since I have complaint to her multiple times. Hans showed that he understood my concerns and assured Laura that he would take care of the situation., (at least that's what was documented as per what he had shown and stated in the meeting).

K. On September 13, I was informed about my termination by Jennifer and Rob.

**Referring to the two situations with Caitlin and Debra that the termination was based on which is  (Time Theft) as I was informed by Rob The Shore Leader in person, and refused to give me this information written on an official document due to the company's legal instruction, At the same time he is who advised me to contact the people team and explain the whole situation to them :**

K1- Punching in, then exiting the store and engaging in non-work-related activities.
K2- Being paid for non-working time (time theft).
K3- Consistent behavior of time theft.
K4- An incident on July 11 where I went to the off-site break room instead of staying on-site before starting my shift.

K-1: July 9th - Including a situation that happened with one of the managers (Caitlin) when I went to the store at 12:30 PM, punch in for my 15-minute download, and being on the floor at 12:45 PM. My shift was marked an hour early (11:30 AM, punch in for the 15-minute download until 11:45 AM to be on floor 1) on the store login system compared to what was in my WorkJam app (this is not the first time it happened, and I have documentation for similar situations). I went to the store managers' office (Caitlin and Debra were in the office), informed them about the reason for coming an hour late, and asked for my 15 minutes to have my breakfast and be on the store floor by 12:45 PM as planned. Caitlin approved this but informed me that this time would not be paid. I clarified whether she meant the 15 minutes or the hour and 15 minutes, and she said all the time. I agreed and left accordingly (this conversation took over 5 minutes already). I went to have my breakfast (Debra followed me and saw me in front of the little island entrance having my coffee and did not say anything). When I returned to the floor at 12:45 PM sharp, one of the managers asked me to go back to the store manager's office to speak with Caitlin. She was in front of the store leader's office, which was open, so she could have followed the feedback standard and asked if I was willing to speak or preferred to speak in private. Instead, she asked me to follow her into the store manager's office where Debra was already inside.

- I was asked why I was not attending the download.
- I explained that I had to be on the floor at 12:45 PM as agreed, and the download starts at 12:35 PM and ends at 1:00 PM, so I can't attend the download as I only have 15 minutes to prepare myself for work. When my schedule includes the 30-minute download, I attend the 30-minute download as explained during my training and as followed by other team members.
- I was informed by Caitlin that she said that she assumed I asked for the 15 minutes to attend the download.
- I explained that I was clear in my request that I needed the 15 minutes to get my breakfast.
- Caitlin asked me to send her an email confirming that I had stepped out of the store during my working time as I should be on the floor on 11:45 AM, which she considered time theft.
- I informed her that I don't do time theft. I had asked to get my breakfast before starting work, and we agreed I would start work at 12:45 PM, which I followed.
- I said it seemed like a bad day and I was already marked an hour late, so I was not feeling well and kindly asked to take the day as sick leave, and I have sent an email requesting a sick leave and left the store.

K-2: We have agreed that this time is not going to be paid, and I have left the office and agreed on back to work at 12:45 PM, and I haven't even had worked that day, so how is it time

theft?

K-3 & K-4: July 11th - Another situation happened with Caitlin on my next working day. I proved that I was in the store at least 20 minutes before the time they mentioned (the attached email proves that), and I logged in when I was asked to go to the floor to help a non-English-speaking customer who wanted to speak with an Arabic speaker. I punched in a few minutes earlier than my working time to avoid being late if it took longer with the customer. The customers were a man named Ahmed and his wife, a lady with a veil, as you can check on the cameras. So I punched in a few minutes early just to help them and then went to sit in the plaza for a few minutes during my 15 minutes before starting my shift.

I have attached an email with a privacy certificate for a course I completed that proves I was in the store before the mentioned time.

K-4: On July 11th, I was informed for the first time that when you only have a 15-minute download, it's to check your email and you can't go to the little island (the break room where everyone goes even during their working time) or the plaza (where most of the managers do their connection meetings). I explained that it was the first time I heard about this rule. According to my knowledge and what I observed, other team members, including managers, were allowed to do that. I was following the practices I learned during training, and I had no problem adhering to the rules once informed.

NB 1: both manager were informed by me that as per my knowledge the first 15 minets download is consider same as my 15 minets break, and they haven't informed me what I can't use the first 15 minets as break time.

NB 2: By logic, if I was informed about this specific rule on July 9th, I wouldn't have gone to the plaza on July 11th, which confirms my point.

NB 3: I have documentation confirming what I am saying, showing that during the 15-minute download, other team members and managers go out to buy breakfast or coffee from Starbucks or the Daily. I never thought I was doing something wrong as this was the normal practice, and it had never been mentioned as against company policy.

NB 4: English is not my first language, and many times I misunderstand things, and sometimes people misunderstand me. But I always ask for clarification. After attending the download table multiple times during my 15-minute download at the beginning of my working days, I wondered why I was the only one staying while there was no download. So I started asking other team members, including managers and leaders, about the 15 minutes, and it was confirmed twice that "when it's only a 15-minute download, it's like your 15-minute normal break—get your coffee, have breakfast, check your email, iron your shirt, but there is no actual download to attend. It's like your preparation time."

L: Conduct Policy Violation

L-1: Accuracy of records and reports that lead to (Time Theft)

- I have always been accurate in all my work transactions and have always informed the My Time team whenever there is any punch-out that wasn't marked on WorkJam.
- I refused to get paid when I had a schedule on Sunday morning at 9 AM on the floor while the store opened at 10 AM, asking my manager to adjust it as there was no work to do in this hour.
- I accepted a 1-hour Webex call with my direct manager on a non-working day without getting paid for it.
- I have attended many of the Apple Volunteer activities without getting paid.
- I have attended many store events supporting my colleagues in any of the store events on non-working days without getting paid.

L-2: Dishonesty as I said I complained to my direct manager and asked to escalate my complaint, but my direct manager didn't confirm that.

- I refused to submit a sick leave when one of the managers in charge of schedules asked me to do it when I requested a day off the next week due to a personal reason to attend an event. I could have easily done it and gotten paid for that day as sick leave, even when he knew I wasn't sick and just needed the day off for the event.
- I have documentation confirming every single point I have presented, including all the complaints I submitted to Laura since March 2023 until August, 2023 and the situations involving Caitlin and Debra as well.

Kindly find attached the following,

Attached 1: My complaint to Laura about the two main situations (including Racism, Discrimination, and Harassment) that occurred with Debra, which led to this conflict and resulted in me being targeted by some managers.

Attached 2: A copy of my previous year's Pulse results.

Attached 1 & 2    

Attached 3: Copies of emails confirming my accuracy regarding timing and payment, including requests to remove extra hours I could have easily been paid for but chose to correct.

Re: Work Schedule ticket
following up.eml    

Attached 4: Copies of emails showing my work schedules being removed for over a month, requiring me to constantly request shifts, and emails asking for time adjustments when the system didn't record my lunch break.

July 26th Time Adjustment.eml    

Re: Time Adjustment.eml
331 KB    

Re: Special Time Away.eml    

Re: Your time away request has
been returned.eml    

Re: Calling out.eml

Re: Work Schedule ticket following up.eml

Re: Work Schedule ticket following up.eml

Re: Work Schedule ticket following up.eml

Re: Work Schedule ticket following up.eml

Re: Work Schedule ticket following up.eml
8 KB

Re: Work Schedule ticket following up.eml

Re: Work Schedule ticket following up.eml

Re: Work Schedule ticket following up.eml

Re: Work Schedule ticket following up.eml

**Attached 5:** Copies of emails confirming my participation in volunteering activities.

Fwd: Food Bank For New York City Opportunity Sign-Up ...
31 KB

**Attached 4:** An email with a course certificate that couldn't be completed outside the Apple Store, which I finished just before punching in on July 11. This supports my claim that I don't punch in early and only did so when asked to help an Arabic-speaking customer.

Course Completion Certificate Private.eml

Based on the provided information and my personal behavior, it doesn't make sense that someone who has volunteered for numerous activities on non-working days, and consistently achieved high metrics such as nearly $1 million in sales, close to 90% customer satisfaction, and approximately 160 Business Intros in my first year as a part-time employee, would be accused of less than 10 minutes of time theft. I believe such a minor misunderstanding could have been resolved with misconduct or warning, but it appears I was targeted and this small incident was used as a pretext for termination.

Given these extensive concerns, I respectfully request a comprehensive review of my case. I believe the decision to terminate my employment did not take into account the full context, particularly the ongoing discrimination and mistreatment I have experienced. I am more than willing to provide any additional documentation or information in person if needed to ensure a fair and thorough evaluation.

Thank you for your time and consideration.

Sincerely,
Ramy Ayoub

> On May 17, 2024, at 1:58 PM, Alexa Prakash <alexa_prakash@apple.com> wrote:
>
> Hello Ramy,
>
> This email is a follow-up to our conversation on May 17, 2024. On April 22nd, 2024, I notified you that I had received your request to review the decision to terminate your employment.
>
> Based on my review, I found that the decision to terminate your employment with Apple was within guidelines. This review concludes Apple's Decision Review process. If you have new information or documentation that you believe would impact this decision, bring it to our attention immediately.
>
> You'll find some additional information below about verification of employment.
>
> Verification of employment allows a prospective employer, lender, or landlord to verify employment with Apple. To obtain a verification of employment, have the verifier got to InVerify. It's available online, 24 hours a day, 7 days a week. When using InVerify, note that Apple's company code is 123400.
>
> If you have questions, contact People Support at 800-473-7411.
>
> The Global Employee Relations team

This email and any attachments may be privileged and may contain confidential information intended only for the recipient(s) named above. Any other distribution, forwarding, copying or disclosure of this message is strictly prohibited. If you have received this email in error, please reply immediately, and delete this message from your system.